UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

NYEMA SMITH,

                Plaintiff,         **MEMORANDUM & ORDER**

   -against-                          05-CV-2363 (KAM)

PATHMARK STORES, INC.,

                Defendant.

----------------------------------------X

**MATSUMOTO, United States Magistrate Judge:**

      Defendant Pathmark Stores, Inc. ("Pathmark") brings this motion *in limine* seeking to exclude the testimony at trial of plaintiff Nyema Smith ("Smith") regarding statements allegedly made by a Pathmark employee following Smith's slip-and-fall at a Pathmark store on February 14, 2004. (See docket nos. 19, 23-25.) The parties dispute whether the employee's statements are properly admitted as non-hearsay under Federal Rule of Evidence 801(d)(2)(D), which permits vicarious admissions against interest by a party's agent or employee. For the reasons stated below, the court finds that sufficient facts have been established to permit the challenged testimony to be admitted into evidence at trial and denies Pathmark's motion *in limine*.

## I. BACKGROUND

      The deposition statements of Smith and certain Pathmark

employees provide the facts relevant to the present motion. Smith alleges that on February 14, 2004, while shopping at the Atlantic Center Pathmark, she turned into the detergent aisle, walked two feet into the aisle, slipped and fell. (Docket no. 19, Ex. A, Deposition of Nyema Smith ("Smith Dep.") at 89-91.) After her fall, she observed an open bottle of laundry detergent resting straight up on the floor, and realized that she was sitting in a puddle of blue liquid detergent, roughly three feet in circumference. (Id. at 97, 99-101.) Smith did not hear any public announcements prior to her fall, did not know how long the bottle or the detergent were present on the floor, and never learned know how the detergent came to be present on the floor. (Id. at 94, 97, 99.)

Following her fall, an unidentified woman told Smith that she had advised store personnel about the existence of detergent on the floor. (Id. at 102.) Smith remained on the floor for approximately ten minutes when she was approached by an African-American male whom she believed to be a Pathmark employee. (Id. at 17, 20.) Smith did not recall if the individual introduced himself by name to her, and she never learned the name of the employee. (Id. at 17-18.) However, the individual was wearing a tag with a "Pathmark" logo on it. (Id. at 18.) According to Smith, the individual told her that "he was sorry for my slip and fall, that he was supposed to clean it up .

. ." (Id. at 18, 20.) It is this alleged statement that defendant seeks to exclude in its motion *in limine*.

Smith states that she was next approached by two Pathmark managers, who purportedly told her that "they were sorry" about her accident. (Id. at 18, 22.) Smith provided her name and phone number to the managers and, about fifteen minutes after her fall, was taken by ambulance to Brooklyn Hospital. (Id. at 16-17, 27.)

Ramon Sanchez, the general store manager, stated in his deposition that he learned about the incident when a customer came to the manager's office and notified him that someone had fallen in the detergent aisle. (Docket no. 23, Ex. E, Deposition of Ramon Sanchez ("Sanchez Dep.") at 12.) Sanchez and one of the assistant store managers, either Kevin Carter or Kevin Johnson, went immediately to the aisle to assist the customer.[1] (Id. at

---

[1] According to Sanchez, two assistant store managers were employed at the Pathmark store at the time of the accident, Kevin Carter and Kevin Johnson. (Sanchez Dep. at 16.) Sanchez states that Kevin *Johnson* was present in the manager's office at the time of the office, that Sanchez and Johnson went together to the scene of the accident, and that Johnson prepared the incident investigation report. (Id. At 19-20.) However, Kevin *Carter*, in his deposition, states that he was with Sanchez in the manager's office when they were notified of the incident, and that they went together to the accident site. (Docket no. 23, Ex. B, Deposition of Kevin Carter ("Carter Dep.") at 9-10.) Additionally, the incident investigation report lists Kevin Carter as the interviewer of the injured person. (Docket no. 23, Ex. A.) Whether the assistant store manager accompanying Sanchez was Kevin Johnson or Kevin Carter is irrelevant for the purposes of this memorandum and order.

3

20.) Sanchez stated that he and the assistant store manager were the first employees to appear at the scene of the accident, and that maintenance employees appeared soon after. (Id. at 36.) Sanchez and the assistant store manager asked Smith if she was okay and if she needed medical assistance, called an ambulance, and used paper towels to help clean Smith up. (Id. at 22, 23.) According to Sanchez, no maintenance employees ever said that they heard about the spill prior to Smith's accident. (Id. at 50.)

## II. DISCUSSION

Federal Rule of Evidence 801(d)(2)(D) defines vicarious admissions against interest by a party's agent or servant, and provides that:

> A statement is not hearsay if . . . [it] is offered against a party and is . . . a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship . . . .

As the Second Circuit has noted, the admission into evidence of such statements is not subject to many of "the technical prerequisites of other evidentiary rules" and "should be granted freely." Pappas v. Middle Earth Condo. Assoc., 963 F.2d 534, 537 (2d Cir. 1992). The reliability of admissions by a party's employee is grounded on two premises: first, that "an employee is usually the person best informed about certain acts committed in

4

the course of his employment," and second, "that while still employed an employee is unlikely to make damaging statements about his employer, unless those statements are true."  Id.

A party seeking to introduce a vicarious admission under Rule 801(d)(2)(D) must establish: (1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency.  Id.  The existence of the agency relationship may be established by circumstantial evidence, although the statement to be introduced may not alone be relied on to establish the existence of the alleged agency relationship. Id.  Indeed, the Rule itself specifies that:

> The contents of the statement shall be considered but are not alone sufficient to establish the declarant's authority under . . . the agency or employment relationship and scope thereof . . . .

Fed. R. Evid. 801(d)(2).  See also Advisory Committee Notes to 1997 Amendment to Fed. R. Evid. 801.

Applying these principles to the case at hand, the court finds that sufficient circumstantial evidence exists to permit the admission at trial of Smith's testimony regarding the Pathmark employee's statement that "he was sorry for my slip and fall, that he was supposed to clean it up . . ."

First, Smith has stated that the individual who made the statement wore a Pathmark name tag, making it clear that the

5

individual was a Pathmark employee.  Second, although Smith does not know the name of the individual, the incident investigation report regarding the accident notes that there were three maintenance employees on duty at the time of the incident, one female and two male.  (Docket no. 23, Ex. A, Incident Investigation Report; Docket no. 23, Ex. B, Deposition of Kevin Carter ("Carter Dep.") at 41.)  The female maintenance employee's duties were limited to cleaning shelves, while the two male employees were responsible for cleaning the aisles of the store.  (Docket no. 23, Ex. D, Deposition of Isabele Araujo ("Araujo Dep.") at 20-21.)  Although none of the Pathmark employees deposed by plaintiff could verify whether either of the two male maintenance employees fit Smith's physical description of the employee who spoke to her, all of the deposed employees agreed that it was the responsibility of maintenance employees to walk up and down the aisles "to make sure if anything is broken or if something dropped on the floor, it gets picked up or swept . . . up."  (Sanchez Dep. at 45; see also Carter Dep. at 27; Araujo Dep. at 15, 20-21.)  Moreover, the deposed employees stated that "maintenance is always on the floor" (Araujo Dep. at 15) and that there are between four and five maintenance employees on the floor at any one time (Sanchez Dep. at 44).

Based on these facts, the court finds it more likely than not that the individual making the statement to Smith was a

Pathmark maintenance employee, that the statement was made during the course of the employee's employment with Pathmark, and that the statement related to a matter within the scope of his employment. The statement is thus admissible as non-hearsay under Federal Rule of Evidence 801(d)(2)(D).

Pathmark attempts to distinguish this case from the factual situation in Pappas by noting that Smith did not state that the Pathmark employee was carrying cleaning equipment with him when he spoke to Smith. See Pappas, 963 F.2d 534, 538 (finding that sufficient circumstantial evidence existed for court to find agency relationship where declarant appeared at scene of accident following a telephone call to management carrying equipment necessary to remove the dangerous condition). Here, however, Pathmark employees have testified that paper towels and other equipment for handling spills were stored on top of the aisles and in other locations throughout the store. (Sanchez Dep. at 28, 71-72.) The Pathmark employee's lack of cleaning equipment is therefore not dispositive, because these supplies were readily available. Similarly, defendant's attempt to highlight the fact that the Pathmark employee here was not dispatched by his employer to the scene of the accident, as in Robinson v. Resorts Int'l, Inc., No. 95 CV 0052, 1997 WL 803758, at *3 (E.D.N.Y. Dec. 4, 1997), is not persuasive. As discussed above, maintenance employees at the Pathmark store were

7

responsible for walking the aisles to look for spills and other hazardous conditions, and it is entirely possible for a maintenance employee to have discovered the spill independently, without having to be dispatched to the scene of the accident. In any case, Sanchez stated that he paged maintenance employees to clean the aisle (Sanchez Dep. at 42), and both Sanchez and Carter stated that maintenance employees did in fact help to clean up the spill (Sanchez Dep. at 36; Carter Dep. at 29).

Although the court thus finds Smith's testimony regarding the Pathmark employee's statement to her to be admissible as non-hearsay, see Fed. R. Evid. 104(a), it will be the role of the jury to determine the meaning and weight to be afforded this testimony at trial.

### III. CONCLUSION

For the reasons stated above, the court denies defendant Pathmark's motion *in limine*.

**SO ORDERED.**

Dated: April 30, 2007
      Brooklyn, New York

                                    /s/
                            **Kiyo A. Matsumoto**
                            United States Magistrate Judge
                            Eastern District of New York